## Charley Adler v. The State.

### No. 4905.  Decided February 20, 1918.

**1.—Murder—Evidence—Unchastity—Insult to Female Relative.**

Where appellant complained that he was not permitted to prove that he knew by information that deceased had caused the separation between a man and his wife, after the general reputation of deceased with reference to his conduct with women was shown to have been bad, there was no error in excluding the above testimony, which was too indefinite.

**2.—Same—Self-defense—Charge of Court—Standpoint of Defendant.**

Where, upon trial of murder, the court's charge on self-defense and the requested charges of defendant as given by the court fully submitted the issue of self-defense from the standpoint of defendant as contradistinguished from the viewpoint of the jury, there was no reversible error.

**3.—Same—Jury and Jury Law—Bill of Exceptions.**

Where the bill of exceptions was too indefinite to show the facts or exclude the idea that appellant was fully aware of all the things complained of before accepting the juror objected to, even if the said juror had made the expressions imputed to him, there was no reversible error.

**4.—Same—Manslaughter—Charge of Court—Insult to Female Relative.**

Even if the complaint to the court's charge on manslaughter had been made in time, it could not avail the defendant, as the killing occurred on the second meeting of the parties after the alleged insult to a female relative. Following Gillespie v. State, 53 Texas Crim. Rep., 167, and other cases.

Appeal from the District Court of Houston.  Tried below before the Hon. John S. Prince.

Appeal from a conviction of murder; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*Adams & Young*, for appellant.—On question of excluding evidence as to deceased's reputation of unchastity:  Smith v. State, 67 Texas Crim. Rep., 27, 148 S. W. Rep., 699; Jones v. State, 69 Texas Crim. Rep., 216, 153 S. W. Rep., 310; Bullock v. State, 73 Texas Crim. Rep., 419, 165 S. W. Rep., 196; Jones v. State, 38 Texas Crim. Rep., 87.

On question of incompetent juror:  Reed v. State, 32 Texas Crim. Rep., 25; Mitchell v. State, 36 id., 278; Long v. State, 10 Texas Crim. App., 186; Henrie v. State, 41 Texas, 573.

*E. B. Hendricks*, Assistant Attorney General, for the State.—On question of general reputation of deceased:  Jones v. State, 38 Texas Crim. Rep., 87.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and allotted ninety-nine years confinement in the penitentiary.

Bill of exceptions No. 1 recites that after the general reputation of deceased with reference to his conduct with women was shown to be bad, appellant offered evidence to the effect that he knew by information that Wellborn had caused a separation between a man and his wife two years ago; and offered to prove he had been informed of such fact, and also offered to prove that it was a fact that deceased had caused such separation, and that appellant had been informed of that fact long prior to the homicide. This is the full bill of exceptions. The object and purpose of this is not stated in the bill, but if it was intended to show that deceased had caused this separation between some man and his wife, it is too indefinite. The general allegation that deceased had been instrumental in separating a man and his wife, in our judgment, is too indefinite to admit such proof, even conceding that specific acts of unchastity or of bad conduct in this connection could be shown. By whom he offered to prove it, or who the parties were referred to, is not given. In other words, the bill is too indefinite to require consideration, even if it be conceded that such specific acts could be shown.

Another bill recites that appellant, before the charge was read to the jury, excepted to that portion of it which charges self-defense, because it shifted the burden of proof from the State to the defendant; did not give the defendant the benefit of the reasonable doubt in his defense, but required him to prove such defense beyond a reasonable doubt. In a general way the court's charge in this connection was subject to criticism in that it authorized the jury if they should believe that at the time of the killing deceased had made a demonstration as if to draw a weapon, etc., that appellant would be entitled to a verdict of not guilty. While the bill is, rather indefinite, yet if it was intended to criticise this part of the charge because it left it to the jury to determine instead of the defendant from his viewpoint, then the charge was not correct, but that portion of the charge is immediately followed by this: "In passing on defendant's right of self-defense, the jury must view the facts from defendant's standpoint at the time and from no other standpoint." Appellant asked a special charge, which was given by the court, to this effect: "If at the time of the shooting by defendant of Wellborn it reasonably appeared to the defendant, viewed from his standpoint at the time, that Wellborn was making an effort or movement to draw a weapon, and defendant believed that Wellborn intended to attack him, and so believing shot Wellborn, then defendant was justified and you will acquit him. Or if you have a reasonable doubt as to defendant's belief at the time of the shooting, you will solve such doubt in defendant's favor and acquit him." These charges, we think, fully submitted the issue of self-defense from the viewpoint of defendant as contradistinguished from the viewpoint of the jury.

There is another bill which recites: "By the witness Deaton: I

never made any remark before I was taken as a juror that Adler, this defendant, had killed a good boy in Trinity County, and sworn lies to get out of it.

"By Earl Adams, Jr.: I heard Mr. Deaton say some time before he was taken as a juror that Adler had killed a good boy in Trinity County, and, as I remember, he stated that Adler had sworn lies to get out of it. Then Deaton said he did say Adler had killed a good boy in Trinity County.

"And the court then overruled defendant's motion for new trial, and defendant excepted, and now tenders his bill for approval." This is signed by the court without qualification. This bill is too indefinite to show the facts or exclude the idea that appellant was fully aware of all these things before accepting the juror, even if Deaton had used such expression. It is unnecessary to go into the motion for new trial with reference to any of these questions. There was a sharp and critical contest, and the court was justified in viewing this matter as he did in his different rulings.

There is a criticism of the court's charge with reference to manslaughter. It comes too late, but if it had been timely presented, it shows no error. The facts show in this connection that appellant and Wellborn had had a difficulty in the morning about alleged misconduct by Wellborn sending appellant's wife an insulting letter. They met and had a difficulty about it. Late that evening they met again and the killing occurred. It is contended that the court should have charged that this second meeting would justify a charge on manslaughter. Such is not the statute, nor the law. This was not the first meeting. The previous meeting might be taken into consideration, but it would not afford an adequate cause because the first meeting had occurred and a difficulty had ensued. The parties separated, appellant's contention being that as he was not in position to kill on the first meeting, therefore he had a right to kill him on the second meeting. This does not seem to be in accord with the statutes or decisions. This matter underwent investigation in Pitts v. State, 29 Texas Crim. App., 374. It was there held contrary to appellant's contention. This was followed in Gillespie v. State, 53 Texas Crim. Rep., 167; Ricks v. State, 48 Texas Crim. Rep., 264, and Young v. State, 69 S. W. Rep., 153.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*